UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| In re: | Case No. 18-06022 |
| --- | --- |
| MC COMMUNICATION LLC, | Chapter 11 |
| Debtor. | Judge HARRISON |
| | ORIGINAL CHAPTER 11 PLAN |

**TABLE OF CONTENTS**

| | | | |
| --- | --- | --- | --- |
| I. | INTRODUCTION | | 2 |
| II. | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | 2 |
| | A. | General Overview | 2 |
| | B. | Unclassified Claims | 2 |
| | | 1. Administrative Expenses | 3 |
| | | 2. Priority Tax Claims | 3 |
| | C. | Classified Claims and Interests | 4 |
| | | 1. Classes of Secured Claims | 4 |
| | | 2. Classes of Priority Unsecured Claims | 4 |
| | | 3. Class of General Unsecured Claims | 4 |
| | | 4. Class(es) of Interest Holders | 5 |
| | D. | Means of Performing the Plan | 5 |
| | | 1. Funding for the Plan | 5 |
| | | 2. Post-Confirmation Management | 5 |
| | | 3. Disbursing Agent | 5 |
| III. | TREATMENT OF MISCELLANEOUS ITEMS | | 5 |
| | A. | Executory Contracts and Unexpired Leases | 5 |
| | | 1. Assumptions | 5 |
| | | 2. Rejections | 6 |
| | B. | Changes in Rates Subject to Regulatory Commission Approval | 6 |
| | C. | Retention of Jurisdiction | 6 |
| IV. | EFFECT OF CONFIRMATION OF PLAN | | 7 |
| | A. | Discharge | 7 |
| | B. | Revesting of Property in the Debtor | 7 |
| | C. | Modification of Plan | 7 |
| | D. | Post-Confirmation Status Report | 7 |
| | E. | Quarterly Fees | 8 |
| | F. | Post-Confirmation Conversion/Dismissal | 8 |
| | G. | Final Decree | 8 |

## I.

## INTRODUCTION

MC Communication, LLC is the Debtor in a Chapter 11 bankruptcy case. On November 21, 2018, Debtor commenced a voluntary bankruptcy case by filing a Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq. This document is the Chapter 11 Plan ("Plan") proposed by the Debtor ("Plan Proponent"). Sent to you in the same envelope as this document is the Disclosure Statement which is pending approval by the Court, and which is provided to help you understand the Plan.

This is a reorganization plan. In other words, the Proponent seeks to accomplish payments under the Plan by using Debtor's income. The Effective Date of the proposed Plan is 45 days after confirmation.

## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.  **General Overview**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

B.  **Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class. The treatment of these claims is provided below.

2

Case 3:18-bk-06022   Doc 89   Filed 04/01/19   Entered 04/01/19 20:20:06   Desc Main
Document      Page 2 of 17

1. **Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

There are no administrative claims under the plan except for any quarterly fees owed by the Debtors that may become due between now and the confirmation of the case and the unpaid attorney's fees for Steven L. Lefkovitz, Counsel for the Debtor-in-possession, which are subject to the approval of the Court.

2. **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years form the date of the assessment of such tax. There are no claimants in this class.

C. **Classified Claims and Interests**

1. **Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtors' secured pre-petition claims and their treatment under this Plan:

A. Secured Class A. The secured claim of ACG Equipment Finance shall be treated as follows:

3

This Claim shall be allowed as a fully secured claim in an amount equal to the unpaid principal balance as of the Petition Date plus all accrued and unpaid interest at the non-default contract rate plus all attorney's fees and expenses as of the Effective Date ("Secured Claim"). The Secured Claim of ACG Equipment Finance consists of a Note (the Note) totaling as of Petition Date the amount of $43,457.00 plus accruing interest, attorney's fees, and other costs described thereby. The Notes are secured by a valid and properly perfected first mortgage priority security interest in a FM 13X Ditch Witch Mix System with a liquidation value of $15,000.00 and the balance of the claim shall be a class 4 unsecured creditor. The documents evidencing the Notes and perfecting the security interest of ACG Equipment Finance. (collectively "Security Documents"), to wit: The Security Agreement, and Financing Statement of record in the Secretary of State's Office for the State of Tennessee.

The Secured Claim is secured to a value of $15,000.00 and the balance of the claim shall be a Class 4 unsecured creditor and is not subject to any objections, counterclaims, set offs, or rights of recoupment. Commencing on the Effective Date of the Plan, the Debtor shall pay $350.00 monthly with interest bearing at the rate of the original contract rate, and the lien securing this claim shall be reinstated upon confirmation of the plan.

B.  Secured Class B. The secured claim of Ally Financial (Ally) shall be treated as follows:

Ally is a creditor of the Debtor by virtue of a Retail Installment Sale Contract dated February 12, 2016 (the "Contract") whereunder the Debtor purchased a 2013 Ram 5500 bearing VIN 3C7WRNFL7DG522479 (the "Collateral"), which Contract was assigned to Ally for value and in good faith. Ally holds a properly perfected, unavoidable, first

4

Case 3:18-bk-06022   Doc 89   Filed 04/01/19   Entered 04/01/19 20:20:06   Desc Main
Document    Page 4 of 17

priority security interest in the subject Collateral as evidenced by notation on the Certificate of Title. Beginning on or before January 30, 2019 and continuing or before the same date of each subsequent month, the Debtor shall pay to Ally $467.00 per month as payments on Ally's secured claim.

As required by the Contract, Debtor shall always maintain adequate physical damage insurance on the Collateral and Ally shall be shown as lien holder/loss payee on the policy. Upon reasonable request being made, Debtor shall provide proof of such insurance to the Ally. Debtor shall be relieved of the obligation to insure the Collateral only upon delivery of possession of the Collateral to the Ally or upon Debtor satisfying in full its obligations to Ally.

Debtor shall maintain the Collateral in same or similar condition as of the date of filing and repair in accordance with all the requirements of the Contracts. Debtor shall make the Collateral available to Ally or its designee for periodic inspection upon reasonable request being made.

Debtor will not allow any repair, storage or other possessory lien to attach to the Collateral unless such lien is incurred in the ordinary course of business and the obligation giving rise to the lien is paid in full when due.

This claim shall bear interest at the original contract rate, and the lien securing this claim shall be reinstated upon confirmation of the plan.

C.  Secured Class C. The secured claim of C.H. Brown shall be treated as follows:

This Claim shall be allowed as a fully secured claim in an amount equal to the unpaid principal balance as of the Petition Date plus all accrued and unpaid interest at the non-default

5

contract rate plus all attorney's fees and expenses as of the Effective Date ("Secured Claim"). The Secured Claim of C.H. Brown consists of a Note (the Note) totaling as of Petition Date the amount of $3,000.00 plus accruing interest, attorney's fees, and other costs described thereby. The Notes are secured by a valid and properly perfected first mortgage priority security interest in a FM 13X Ditch Witch Mix System with a liquidation value of $15,000.00 and the balance of the claim shall be a class 4 unsecured creditor. The documents evidencing the Notes and perfecting the security interest of C.H. Brown (collectively "Security Documents"), to wit:

The Security Agreement, and Financing Statement of record in the Secretary of State's Office for the State of Tennessee.

The Secured Claim is fully secured to a value of $3,000.00 is not subject to any objections, counterclaims, set offs, or rights of recoupment. Commencing on the Effective Date of the Plan, the Debtor shall pay $350.00 monthly with interest bearing at the rate of the original contract rate, and the lien securing this claim shall be reinstated upon confirmation of the plan.

D.      Secured Class D. The secured claim of Capital Source 2000 shall be treated as follows: This Claim shall be allowed as a fully secured claim in an amount equal to the unpaid principal balance as of the Petition Date plus all accrued and unpaid interest at the non-default contract rate plus all attorney's fees and expenses as of the Effective Date ("Secured Claim"). The Secured Claim of Capital Source 2000 consists of a Note (the Note) totaling as of Petition Date the amount of $626,398.59 plus accruing interest, attorney's fees, and other costs described thereby. The Notes are secured by a valid and properly perfected first mortgage priority security interest in a 2014 Ditch Witch JT 60 Mix System with a liquidation value of $15,000.00 and the balance of the claim shall be a class 4 unsecured creditor. The documents evidencing the Notes

6

and perfecting the security interest of Capital Source 2000 (collectively "Security Documents"), to wit: The Security Agreement, and Financing Statement of record in the Secretary of State's Office for the State of Tennessee. The Secured Claim is secured to a value of $15,000.00 and the balance of the claim shall be a Class 4 unsecured creditor and is not subject to any objections, counterclaims, set offs, or rights of recoupment. Commencing on the Effective Date of the Plan, the Debtor shall pay $350.00 monthly with interest bearing at the rate of the original contract rate, and the lien securing this claim shall be reinstated upon confirmation of the plan.

E. Secured Class E. The secured claim of Complete Business Solutions Group in the amount $2,139,238.16 shall be as a Class 4 unsecured creditor and shall not be treated as secured claimant in this plan.

F. Secured Class F. The secured claim of De Lage Landen Financial Services (Scheduled as Stearns Bank) shall be treated as follows:

1. Prior to the petition date, DLL extended credit to the Debtor for the acquisition of: one (1) Vermeer D20X2211 Directional Drill (Serial Number 1VR6180T6F1001706); one (1) Vermeer D20X22 Drill (Serial Number 1VR4180L871000243); one (1) Digitrak F5 Locating System (Serial Number 30082959); one (1) Belshe Bf90 Trailer (VIN: 16JF02039 D104762), with MX125 Mixing System (Serial Number 1VRX03026D2003045) and all related accessories and attachments (the "Equipment") pursuant to two separate written loan and security agreements (collectively, the "Agreement"). DLL is a secured creditor of the Debtor by virtue of the Agreement and two related UCC-1 Financing Statement: one filed January 11, 2016 with the Tennessee Secretary of State at Document No. 424385321 and another filed September 24, 2015 with the Tennessee Secretary of State at Document No.

7

423885595. The Secured Claim is fully secured and is fully allowable in this case and is not subject to any objections, counterclaims, set offs, or rights of recoupment. Beginning March 18, 2019, the Debtor will pay to DLL $3,408.89/bi-weekly until the account is brought current. After the account is brought current, the Debtor will resume payments to DLL in an amount and in a manner consistent with the terms of the written loan and security agreement between the parties Lease No. 10097527.

The Debtor shall immediately surrender to DLL the 2007 D20X/22 Drill (Lease No. 10088263) located in Birmingham, Alabama. The Debtor shall cooperate with DLL to insure a speedy and safe turnover of the Equipment.

This claim shall bear interest at the original contract rate, and the lien securing this claim shall be reinstated upon confirmation of the plan.

    **2.**    **Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims. There is one priority unsecured claims under the Plan, which shall be treated as follows:

Internal Revenue Service (IRS) priority claim will be paid in equal monthly installments with interest at the rate of (6%) per annum commencing on the **Effective Date** of the plan, as follows: Revenue has a priority claim in an amount of $136,000.00. The debtor must pay Revenue no less than $2,500.00 per month. All payments will be applied first to unpaid taxes

8

until unpaid taxes are paid in full and then to any accrued penalties and interest on the unpaid taxes. Additionally, the following constitutes a default under the plan: If the debtor fails to make any deposit of any currently accruing employment tax liability, fails to make payments of tax to Revenue within ten days of the due date of such deposit or payment, or if the debtor fails to file any required federal tax return by the due date of such return, then the IRS may declare that the debtor is in default of the plan. In the event of default of the plan, the administrative collection powers; and the rights of the IRS will be reinstated as existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a tax lien and the powers of Levy, seizure, and sale under state law. Further, if the debtor fail to make the required payments under the plan then the entire imposed liability (including any unpaid current liabilities) against the defaulting debtor, shall become due and payable immediately upon demand to the defaulting debtor. The claim of the Internal Revenue Service shall not be discharged until all taxes have been paid in full. The tax lien of the Internal Revenue Service is retained until paid in full in the event that such a tax lien has been filed. In the event that the Debtor files a subsequent bankruptcy, then the Internal Revenue Service shall retain its priority status as to the claim filed herein.

3. **Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
|        |             |                |           |

9

| 4 | General unsecured claims<br><br>• Total amount of claims = $2,500.00 including disputed claims | Y, Claims in this class are entitled to vote on the plan. | • Pymt interval<br>• Pymt amt/interval<br>• Begin date<br><br><br>• End date<br><br><br><br>• Interest rate<br>• Total payout | = Monthly<br>= $500.00<br>= 1st day of the month after effective date<br>= 60 mos. from effective date<br>= 0<br>= $30,000.00 |
|---|---|---|---|---|

Monthly payments shall be made on a pro rata basis based on the value of each unsecured claim. Any plan payments returned to the Debtor by unsecured creditors shall become property of the reorganized Debtors.

4. **Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder.

The Debtor is a limited liability company and the ownership shall be reinstated on confirmation,

D. **Means of Performing the Plan**

1. **Funding for the Plan**

The Plan will be funded by the following: Income from Debtor's earnings from the sale and subdividing of dredging business.

2. **Post-confirmation Management**

The Debtor shall be responsible for post-confirmation management.

3. **Disbursing Agent**

Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

10

## III.

## TREATMENT OF MISCELLANEOUS ITEMS

A. **Executory Contracts and Unexpired Leases**

    a. **Assumptions**

There are no unexpired leases or executory contracts to be assumed under this Plan.

    b. **Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:

All executory contracts and leases not explicitly assumed above.

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT WAS April 4, 2019. Any claim based on the rejection of a contract or lease will be barred unless the claim is made within thirty (30) days of the order confirming the Chapter 11 Plan.

B. **Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

C. **Retention of Jurisdiction.**

The Court shall retain jurisdiction for purposes of granting a discharge to Debtor, determining any and all objections to the amounts of claims, applications for compensation and expenses, to enforce the provisions of the Plan, to correct any defect, cure any omissions or reconcile any inconsistency in the Plan, and to determine such other matters as may be provided for in the Order of the Court confirming the Plan.

11

# IV.

# EFFECT OF CONFIRMATION OF PLAN

### A. Discharge

Pursuant to 11 U.S.C. §1141(d)(5), in a case in which the Debtors are individuals, Confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan. However, §1141(d)(5)(B) provides that at any time after the Confirmation of the Plan, and after notice and a hearing, the Court may grant a discharge to the Debtors before completing all payments under the Plan if (1) the value, as of the Effective Date of the Plan, of property actually distributed under the Plan on account of each Allowed Unsecured Claim is not less than the amount that would have been paid on such Claim if the estate of the Debtors had been liquidated under Chapter 7 on such date, and (2) modification of the Plan under Section 1127 is not practicable. To determine the amount that would have been paid if the estate of the Debtors had been liquidated under Chapter 7 on the Effective Date of the Plan, please refer to the liquidation analysis contained in the Disclosure Statement.

### B. Revesting of Property in the Debtor

Except as provided elsewhere in the Plan, the Confirmation of the Plan revests all of the property of the estate in the Debtor.

### B. Modification of Plan

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan. The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1)

the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

### D. Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

### E. Quarterly Fees

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

### F. Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

### G. Final Decree

13

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date: March 31, 2018

Respectfully submitted,

/s/ Steven L. Lefkovitz, No. 5953
STEVEN L. LEFKOVITZ
Counsel to the Debtor
618 Church Street, Suite 410
Nashville, TN 37219
Phone: (615) 256-8300
Fax: (615) 255-4516
Email: slefkovitz@lefkovitz.com

## List of General Unsecured Claimants (MC Communications)

| Class | Claimant | Insider | Impaired | Amount |
|---|---|---|---|---|
| Priority | IRS | | | $ 136,000.00 |
| | Alliance Management Services, LLC | | | $ - |
| | AT&T | | | $ - |
| | Beau Baustien | | | $ - |
| | Despoy & Roberstson Law Firm | | | $ - |
| | Jon Crow Attorney | | | Unknown |
| | Murfreesboro Electric Dept. | | | $ 7,411.27 |
| | National Tire & Truck Repair | | | $ 13,000.00 |
| | New York Unity Factor, LLC | | | $ - |
| | Parr Funding | | | Unknown |
| | Platte Valley Bank - WY | | | $ 10,654.00 |
| | Sunbelt Rentals, Inc. | | | $ 24,999.00 |
| | The LCF Group | | | $ 315,880.00 |
| | WBL | | | $ 100,000.00 |
| | West Pacific Drilling, Inc. | | | $ 122,126.00 |
| | Woods Horizontal Directional Drilling | | | $ 200,000.00 |
| | | | | $ 930,070.27 |

## List of Proerty (MC Communications)

| Class | Claimant | Insider | Impaired | Amount |
|---|---|---|---|---|
| Cash | US Bank Checking Account | | | $ 5,924.54 |
| | Office Furniture | | | $ 50.00 |
| | Collectibles | | | $ 50.00 |
| Vehicles | 2001 Cros TRA UT | | | $ 4,500.00 |
| | 2012 Ford F550 Bucket Truck 2DR | | | $ 36,000.00 |
| | 2013 Dodge Ram (Blown motor) | | | $ 12,500.00 |
| | 2008 Ford F550 Flatbed (Blown motor, needs repairs) | | | $ 10,000.00 |
| | 2012 Ford F350 Flatbed Truck (Needs major repairs) | | | $ 18,000.00 |
| Watercrafts/trailers/ aircraft/accessories | 2 Cable Trailers to pull behind trailers, 1 pull behind trailers with mixing systems | | | $ 27,500.00 |
| | FM 13x Ditch Witch Mix System /tank & install, 2018 & locating system | | | $ 40,950.00 |
| | 2014 Ditch Witch JT25 Directional Boring Machine, 2017 Felling FT-30 trailer, 1 TKQ Receiver, Subsite Remote, 17T4 Beacon | | | $ 162,000.00 |

| Causes/actions | 2014 Ditch Witch JT60 | $ 250,000.00 |
| --- | --- | --- |
| | Ursa Major Drilling Company, Pennsylvania potential lawsuit (Debtor - they owe $325,000 & may be sued in the future.) | $ 325,000.00 |
| | | $ 892,474.54 |